is case number 24-12564, Janice Ellery et al. v. Fay Servicing, LLC. Good morning. May it please the Court. My name is Daniel Solar. I represent Plains of Helens Janice Ellery and Lillian Patino. This appeal arises from the District Court's dismissal of claims that were alleged for violations of the Real Estate Development Procedures Act and Fair Debt Collections Practices Act against Fay Servicing. The District Court originally dismissed the operative complaint without prejudice holding that appellants failed to state a claim under either statute and subsequently dismissed the case with prejudice after plaintiffs reasonably believed that the allegations or amendment of the complaint would be futile. And we respectfully submit that the District Court erred in the legal conclusions of the dismissal and the complaint as pleaded states plausible claims for relief under both the FDCPA and RESPA. Before getting into the two main arguments about the errors the District Court made in the analysis of the complaints for the FDCPA and RESPA, I would like to take a moment to address the standard of review and the arguments raised by appellees. Let me ask this. As I understand it, we'll start with the Debt Collection Act claim. Is that fair? Yes. So under the statute that you are proceeding under is 15 U.S.C. 1682e and specifically subsection 10 of e. And that requires that the debt collector, it makes it unlawful for the debt collector to quote unquote use any false, deceptive, or misleading representation or means in connection with the collection of any debt. And it's that last part that the District Court ruled on. And what we've said is that for there to be a letter or some sort of communication or representation in connection with debt, it generally quote has to quote convey information about a debt and its aim is at least in part to induce the debtor to pay. Is that, have I stated the correctly so far? As I understand it, yes. Okay. All right. So we have the letters here and taking a look at them. Tell me how that letter, which the letter is one in response to the letter given by here the debtor, by the holder of the debt, the holder of the mortgage or the person who owns the house in response saying, we're denying the short sale is a relationship here. How is that information about a debt? How does that convey information about a debt? It, and I think the distinction is that it's, it's in connection with the collection of a debt and furthers the collection of that debt. How does that, how is that convey information about a debt? Because it, it furthers the collection of the debt and that's the, the denial of the short sale. Whether it furthers or not, that's the second part. We'll get there. I'm talking about the first part. It's an and, it has to be two things. It has to convey information about a debt and its aim is at least in part to induce debtor to pay. You're sort of referring to the second part. I'm asking you about the first part. And I think it conveys information about the debt because it is a, a, a letter that was generated in response to a means of attempting to settle the debt. It's not a, there's not a, a, uh, uh, it wasn't to settle the debt. It wasn't, Hey, I'd like to pay it off under this sort of payment plan. Or I think I owe this much or you say I owe this much. I think I owe this much. It is, I'd like you to approve a sale of my house to a third party. And they said no. Well, approve sale of house to the third party for an amount, a short sale by its nature is for an amount less than what is, is owed upon the debt itself. So, so we would argue that it is an attempt to, to, to settle that debt. What does a debt mean? Does the statute define debt? A debt is a, yes, it's a, a, a, a personal obligation for, for an amount claim to be due an owing, uh, uh, to a creditor. Here's what, here's what, uh, section 1692A subsection five states. Uh, it says a debt is quote, any obligation, and I'm taking out a couple of words there, of a consumer to pay money arising out of a transaction. How is this letter conveying information about the obligation to pay money? Because it's in relation to the, the underlying debt that is. I know it's in relation to it, but how is it about the obligation to pay money? It's, it's, if anything, it's the opposite. It is, I, I don't want the money that you are going to give me from this third party. I am denying it because I think it's, uh, um, some less than an arm's length transaction. How's that information about the debt when it's a denial of a right to sell the property? Because it's, it's making the, the collection of that at all the more likely. It's making the, the, the, the, the likelihood that, that, uh, uh, appellants were going to have to, you know, eventually pay that debt back, whether it through the, let's take that part. I know you keep wanting to come back to that. And I, I know you in your brief, I'll give you an example on the gray brief at page eight, your library page eight, you said that the whole point of this is the conduct was made to induce the plaintiffs use the names, but the plaintiffs into foregoing the short sale opportunity and settling their debt in another way. These letters aim to make Faye attempts, Faye's attempts to foreclose on the plaintiff's property more likely to succeed. That's the argument you're making now, right? Correct. Can you point me in the complaint where it alleges that, uh, I will have to, to pull that up directly on rebuttal. All right. I appreciate that. I, I, I will tell you, I've, I've read the complaint a couple of times now and I just, I'm having trouble finding where that allegation, which is all the district court had in front of it is there such that we could be able to say that the aim of this letter was exactly what you're saying, which is it was done with the intent to induce them, uh, to pay instead of, or to foreclose and to collect more money as a result of that. Okay. Let me ask you another question about your argument though, assuming that it was preserved, made in the complaint. Under, under your understanding of what it means to be in furtherance of collecting a debt or to collect a debt, wouldn't virtually anything the lender does meet that description? Um, because basically what you're saying is, well, the strategy or the tactic of the lender in denying the short sale is to get the person to pay the debt. It seems to me kind of far afield from the language of the statute. And I, I would say that, that the, the, as a consumer statute is supposed to be construed broadly. The, the, the, it, it, it goes to, you know, this isn't a, a strictly informational, uh, type of letter. It's, it's a, it's a, a, these now letters are a letter that are, are, are, you know, parts of a, a, uh, mechanism where a right is being taken away from, uh, uh, the appellants to be able to settle this debt as mentioned before. It's a, a, it's not a, a situation where there is, um, you know, conveying information about the debt, but, but not, uh, uh, causing any sort of, of harm to the plaintiff. This is specifically taking away an option that they were originally deemed eligible for to, to engage in the short sale process. And then taking the opportunity effectively away from that by, by issuing what, uh, appellants have alleged is just baseless, completely false, uh, uh, uh, reasoning for denying it. But going back to Judge Luck's question, um, the letter doesn't say anything about the debt specifically, right? It talks about an alternative to paying the debt. If that's covered by the statute, what kind of communication wouldn't be that, that a lender might make wouldn't be? Where, where would we draw the line there? And I think that's where you draw the line is, as I mentioned before, where, where there are, uh, uh, purely informational, uh, uh, uh, correspondences being sent. I, I think in this case by effecting a right that the appellants would otherwise have, that furthers the collection of the debt. Can I ask you about the, the, the RESPA claim? Please. Okay. So, um, as I understand it, you're mostly going, you're going under, uh, a 2605E, um, and, uh, a 2605K1C, uh, which, uh, says that the servicer or the, the, the, here, the, the real estate entity shall not fail to take timely action to respond to a borrower's request to correct errors related to allocations of payments, final balances for purposes of paying off the loan or avoiding foreclosure or other standard servicers duties. And then those duties are set out in Regulation X, and specifically we're talking about, uh, 1035, right? Correct. Okay. So going to 1035, the way that I understand it is that the servicer shall comply with the requirements of this section, but it's, it's, there's a caveat there, and that's for any written notice from the borrower that asserts an error. And so there needs to be an error in order for the obligations under that statute, which require a response and investigation to apply. You agree? Correct. With one caveat is that there, there is a, a, I think there's a distinction and part of what, uh, uh, the, the district court and, and, uh, uh, employees relied upon is that the, the borrowers must state the error that they, they believe to have occurred. There's not a specific requirement that the, the error actually occurred, but, but the rationale they believe it occurred so they can get a response back to whether or not there was one. Okay. Um, so let's look at the, the errors that are what are called covered errors, uh, which is under subsection B of 1024, uh, uh, uh, dot 35. Okay. Um, and I, as I understand it, you're sort of proceeding on two of them. Uh, subsection seven states failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, comma, as required by section 100439. And then the catch all 11, any other error relating to the servicing of a borrower's mortgage, uh, a borrower's mortgage loan, right? Correct. Okay. So let's start with subsection seven. So that one seems to be done, the loss mitigation options and foreclosure as required by subsection 102439. Doesn't that tell us that we have to look for the obligations of the borrower, I'm sorry, of the lender that are in subsection, uh, that are in section 102439? And we would argue that, that the, the, uh, uh, uh, uh, obligation where, where they add in the accurate information, uh, about the options available. In this case, they're effectively, uh, uh, just, sorry, but you agree with me that you have to look to the obligations that are embedded in 102439, right? Yes. Okay. So tell me which one is, they did not provide that are in 102439? Because 102439, uh, uh, requires that you provide information about the availability of, of, uh, uh, uh, specific options. Uh, in this case, our argument, uh, under, under B7 would be that the, the inaccurate information that was provided about the short sale effectively precluded any sort of consideration under. Can you, can you show me where that is the case? In other words, how do we read the letter to say this particular short sale option that you've presented to me is, is, uh, and not an arms lane transaction, a prohibition on any loss mitigation option or short sale that would be presented? Because it, because by the fact that it is the, the, the borrowers believe there was absolutely no basis in, in fact, for the statement that it was not an arms lane transaction. There had been, uh, as alleged in the notice of error and as alleged in the complaint, there was not a, a, a prior existing relationship between the parties. There was not. Well, it may be wrong, but, but as I read the options in, uh, 10, 24, 39, being wrong is not one of them. Um, I, the, you pointed out to the, the requirement that there be, uh, loss mitigation options available. And I, I guess my, my question is, and I know where time's expired here, so is it okay if I ask the last question here? Yes. Thank you. Uh, if, if the, my question is, where in the letter that we have, is there an indication by the, by Faye that there is no, uh, examples of loss mitigation options that may be available to the servicer rather than a specific denial of a specific request for short sale? Because the specific denial of this request was in, in our argument so factually inaccurate that it, it showed that there was a, a, a, a refusal to even review or implement for, for these options. That, that it, it, you know, precluded and discouraged the borrower from even attempting to apply for that option. Thank you. You'll have your full three minutes left for rebuttal. Thank you. Counsel for Faye? Good morning, and may it please the Court. Jacob Hansen on behalf of Faye Servicing, LLC. When plaintiffs defaulted on their residential mortgages, they had no right to have any loss mitigation application approved. Yet that, that is the crux of plaintiff's claim, that they did have a right to have their loss mitigation application approved, and that the denial of the short sale applications by Faye constituted unfair debt collection under the FDCPA, and that the failure to correct the denials violated Regulation X of RESPA. Can a servicer just lie? No, a servicer cannot lie. A servicer has lots of obligations that arise both under Regulation X as well as other acts. Tell me what the remedy would be here. Let, let, the allegations are essentially that the servicer lied. They just made it up, and they made it up because they didn't want to sell this property for less than they thought they could otherwise recover for it. What is, I think we could all agree that that's not a good thing if that's what happened here. What is the remedy for, for a borrower under that situation? Yes, Your Honor, and this goes to the last questions that you were asking my colleague about, was this a letter sent pursuant to Section 1024.39? The answer is it was not. It was a letter sent pursuant to Section 1024.41 of Regulation X. That governs the loss mitigation procedures, and it provides a specific remedy to a borrower if they think that a servicer has incorrectly denied a loss mitigation application. Play that out for me. So they send the letter, there's a requirement for a reasonable investigation and a response. Here, there was a response. They then can appeal that and say, I think you're wrong, please look at it again. They did that, at least one of the plaintiffs did that. And where does that leave us? Then if they're still unsatisfied, they could bring a claim under Section 1024.41 of Regulation X, which plaintiffs have not done here. Plaintiffs also did not appeal the denial of their short sale applications under Section 1024.41H. So what is the further appellate process? Correct. What is it? The further appellate process is not regulated, as I understand it, to a specific nature, but it does require that there be a reasonable investigation of the allegations and then a further determination that is made. Didn't they do that here? I mean, they came back and said, hey, this thing really is not an arms and transaction, we're not related, we don't know these people. And the bank said, hey, we've looked at this again and we think we're right. So haven't they exhausted at that point? Well, they have exhausted it at that point, but they have not brought a claim in the operative complaint under Section 1024.41H. That's the deficiency, that 1020, that .41, I'll call it 1024.41, is the avenue in which you need to process, exhaust whatever administrative remedies you have here. And once that's done, you could bring a separate claim under RESPA regulations. Correct, Your Honor. And that didn't happen here, that's the problem? Correct, that did not happen. And I think that fully addresses the subsection B7, covered error. Again, this was not a letter sent under Section 1024.39 as required to be a covered error under subsection B7. What about the catch-all? Yes, so under the catch-all provision, that defines as a covered error any other error relating to the servicing of a borrower's mortgage. And so we can look to the plain language of the regulation here and find that the district court did not err in dismissing the claim. Under RESPA 12 U.S.C. Section 2605, subsection I.3, servicing means receiving any scheduled periodic payments from a borrower and making the payments with respect to the amounts received from the borrower. Here, denying the short sale applications had nothing to do with receiving payments from the borrower or making payments with the amount received from the borrower. It's simply not servicing and doesn't fit within the catch-all provision. Could something related to short sale fit within that definition? Let me give you an example. Let's say there's an approved short sale and there is a payment dispute under the short sale. Hey, we have a short sale. We need you to approve these documents. Here's the payment schedule for what the short sale will be, you know, and this is what we thought you approved. No, you didn't. We actually agreed to this and these were the conditions of the short sale. Would that go to the collection and payment at that point or no? You know, I would not draw a bright-line rule that a short sale application denial could never fall within the catch-all provision, but the facts alleged here simply aren't that. So maybe your Honor's hypothetical could fall under that provision, but that's not what we have alleged here. It was simply a denial of the short sale application as being not arm's length. Talk about the Second Circuit's distinction between the decision on a short sale and the implementation of the right to short sale and how that plays in here. Certainly. Well, I would dispute that there is a distinction. So in the Nimalee v. Auckland loan servicing case, the servicer had approved the borrower for a loan modification, and even though the borrower successfully completed the loan modification, the servicer denied the loan modification because they had failed to record the mortgage and they had lost certain key documents. And then the borrower, like here, brought a claim under Section 1024.35B11 after the servicer failed to correct the alleged error of denying the loan modification. And what the Second Circuit said was that although the failure to record the mortgage constituted a covered error under B11 and that the loss of the key documents constituted a covered error, that the actual denial of the loan modification did not. And in fact, they said that subsection B11 did not apply to a quote servicers failure to properly evaluate a borrower for a loss mitigation option. And that language is mirrored in the CFPB commentary. In 2023, and looking at Section 1024.35 and subsection B11, the CFPB explained that with respect to loss mitigation practices, the Bureau declines to add a servicers failure to correctly evaluate a borrower for a loss mitigation option as a covered error in the final rule. So the denial of a short sell application simply is not a covered error according to the plain language of Regulation X, according to the CFPB commentary there too, and as the other courts have found. All right. So I want to ask you about the Debt Collection Act claim. Judge Pryor asked your opposing counsel about the sort of the scope of what is a loss or I'm sorry, what is a debt and what conveys information about a debt. Where do you think that line is drawn in terms of when a letter conveys information about a debt? So the first part of what I understand our test to be about whether something is in connection with debt collection. Right. So this circuit has given guidance on what we can look for in a communication. It would include things like making a demand for payment, stating the amount of the payment that would be due, discussing the total amount of the loan, threatening punitive actions if a payment is not made. What do we do with the statement at the bottom of the letter? Well, courts that have considered this have ruled rather that the boilerplate language that this is a communication from a debt collector is not dispositive. How do I know that's boilerplate? I mean, again, we only have the allegations and the complaint here. We have the attached letters, and this was done on a motion to dismiss. So what I have is a letter that is essentially an admission that this is a debt collection communication. What do I do with that on a motion to dismiss stage? Right. So I think that we look at the letter as a whole, and that's what this circuit's precedent instructs. And that when we look at the letter as a whole, there's no demand for payment. There's no statements about the debt in any way. There's no threats of further punitive action. I think it's also important to note that at the time that these letters were sent, final judgments of foreclosure had already been entered against the plaintiffs. So at that point, the debt had merged into the final judgment. And so this wasn't an attempt to collect on this mortgage anymore. This was simply a notification that the short sale applications had been denied. But I mean, but the bank, through the servicer, has an interest in the excess judgment, though. I mean, it's hard to divorce that to say just because we're post-judgment that at that point, you know, there really can be no debt collection. It's all about foreclosure. I mean, at some point, there's an interest to collect some money on top of this whole thing, right? I believe that that is true. Otherwise, foreclosure would not have been pursued. I mean, just knowing a little bit about Florida foreclosure law, I imagine there's an excess judgment provision in the judgment here. I don't know that we have it in the record, but... Correct. That is not in the record, but I believe that that is true. It was pretty standard when I was involved in this sort of thing. Yes. And so at that point, there is some interest in collection above and beyond what's owed on the mortgage by the servicer because they get to, they and the bank get to collect the excess judgment. So it seems to be hard to say that just because this is at that stage that it's not, but it may be that the other parts of the letter seem to indicate that this is not a debt at all. What about his argument that the aim here is one of collection? Because by denying this, they're essentially going to get more money through a foreclosure sale. What do we make of that argument? I don't know what to make of that argument, to be honest. I think that that is speculation as to what might happen in the future. There we look at the act. The circus practice is to consider whether there are the trappings of debt collection. And as your honor pointed out, this letter is simply informative. It's a letter that was required to be sent under section 1024.41 of regulation X, notifying the borrower that their loss mitigation application was denied. Does that matter? In other words, should that play in our analysis that this is a required response for a covered inquiry or for an inquiry and that that indicates its nature as opposed to sort of a free flowing, hey, you owe a lot of money, you get pay up kind of letter? Yes. And I think that this circus precedent recognizes that that when a borrower has sent out a request to a debt collector and the debt collector responds with a purely informational letter in response, this circuit has held that that is not debt collection. I'd also like to highlight this this court's ruling and Farquharson v. Citibank N.A., which is an unpublished opinion from 2016 that I think is instructive. There, the plaintiffs brought claims against Bank of America, also under section 1692 E, based on a loan modification letter that Bank of America had sent. And that letter stated the amounts that plaintiffs would have to pay under the loan modification plan when those amounts were due. And it said that if you make the first payment, then we will not proceed with foreclosure. This court, in reviewing that letter, said that it was not debt collection and because it, quote, did not demand or even request that plaintiffs make any payments under either the loan modification plan or the original note. I think the letter in Farquharson is much closer to debt collection than the simple letter we have here that had a list of reasons that a short sale application would be denied and a check next to one of those reasons. So under this circuit's prior rulings, I think that under section 1692 E, plaintiff has not alleged that there was debt collection. But even if there were debt collection, that's still not enough to state a claim. Under section 1692 E, as Your Honor mentioned, the debt has to be collected using a false deceptive or misleading means. As this court explained in Milkovich v. Shaffritz and Dinkins P.A., false or deceptive means of collecting a debt refer to things like erroneously stating the amount of the debt, incorrectly identifying the holder of the debt, making false threats of future litigation. Plaintiff's complaint doesn't allege anything like that in this case. It does allege a falsity, though. I mean, that just gets back to whether that falsity is in connection with debt collection, in my mind. It gets us back to the issue we've been talking about. But, I mean, in terms of whether there's been a falsity or not, how is it not enough for them to allege this was a lie and an intentional one that they knew because we put them on notice that there was no arm's length transaction and they stood by this false representation? If that goes to the debt collection, if that is in connection with debt collection, how would that not be sufficient? Well, because, Your Honor, it doesn't reflect any of those sorts of concerns that the court addressed in the Milkovich case. Plaintiffs have not pleaded that there were misrepresentations about the amount of their debt, about who held the debt, or about how that debt was going to be collected in this case. So, under Milkovich and the circuit's precedent, there simply has not been an allegation of debt collection that was conducted in a misleading deceptive way. In sum, Your Honors, plaintiffs are relying on causes of action that have never been applied to loss mitigation determinations. The denial of the short sale applications was not debt collection, and it was not a covered error. As such, plaintiffs' claims under the FDCPA and Regulation X were properly dismissed, and this court should affirm. Thank you. Thank you, counsel. Rebuttal. Thank you. I'd like to address one point that was brought up during Apley's argument, and that is surrounding, and the district court relied on a lot of cases surrounding the idea that in circumstances like this, the proper means of correcting the mistake is not via a notice of error under 1024.35, but rather through an appeal of the loss mitigation denial under 1024.41 subsection H. The problem with that, and why the short sale process at issue is distinguished from that rationale in those cases, is that if you look at the statutory language of 41 subsection H, the appeal right only extends not to loss mitigation denials generally, but only to a trial or permanent loan modification, a retention option in short. There is no ability, and was no ability, for appellants to even bring an action under 1024.41. The problem typically with short sales is that that comes after retention options have been already analyzed, and eligibility for those has already been determined and denied, and they cannot enter into retention option. The other complicating factor then is, I believe, it's 1024.41, I believe, I or J, I cannot remember specifically, but it specifically says that the procedures under 1024.41 are only going to be applicable for one application per default per servicer. I think that's where the distinction comes in, additionally, with the implementation versus the evaluation eligibility argument. You're saying your clients have been through this before with regard to FAA, and so this was their second bite at the apple. They don't get to challenge the second bite, right? And they don't get to challenge it regardless if it was the first bite for appeal. I understand, but that last point, that's what you're saying, right? Yes. We would equate the short sale process, because what happens with the short sale process standardly is that the borrower will be approved, conditionally approved for a short sale, saying you're not approved for any retention options, you're conditionally approved for deed in lieu or a short sale. And at that point, it becomes more of a, much like the Nyamoli case, much more of a implementing that option they've already been deemed eligible for, the short sale that they've already been deemed eligible for, and there's an obligation then to process and implement the reviews of those matters. Can you tell me where in the complaint it says that they've already been deemed available for a short sale? If you look to the NOEs that are attached to the complaint, especially in Ms. Patino's case for certain, there were multiple denials on these issues. So it was not just a single denial for arm's length transaction. There were at least two of those without any further explanation, and that's where the NOEs explicitly address that.